### GASS v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. June 23, 1904.)

1. STREET RAILROADS—COLLISIONS WITH TEAMS.

Where both the motorman of a street car and the driver of a truck were at fault in calculating that there was space enough for the car to pass, there could be no recovery for an injury to one of the horses on the truck, caused by a collision of the car with the truck.

2. SAME—NEGLIGENCE OF DRIVER.

A driver of a truck, who, when backing it against the curb to unload, did not leave room enough for street cars to pass, but unnecessarily occupied the tracks, and left his team with a young boy, who, from lack of judgment or discretion, did nothing to avert a collision when he saw an approaching car, was guilty of negligence, so that for an injury to one of the truck horses, caused by a collision, there could be no recovery.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by John Gass against the New York City Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and SCOTT, JJ.

Bayard H. Ames and F. Angelo Gaynor, for appellant.

Leon Kronfeld, for respondent.

MacLEAN, J. Intending to deliver heavy barrels of sauerkraut at a grocery on the southeast corner of Park avenue, the driver of plaintiff's truck backed the vehicle against the curb on the southerly side of 116th street, and turned his horses easterly so that the hub of the fore wheel on the nigh side was towards defendant's east-bound track. The driver went into the store, leaving the son of the plaintiff, a lad, said by himself to be 14 years of age, called by the witnesses "a little boy," holding the lines. It was about 10 o'clock in the evening of a dark, snowy night in December, 1903. There was a lighted lamp post near by, and the lights were shining through the grocery windows, which were frosty. There were lamps, but not lighted, upon the truck. About two minutes after the wagon had been so stopped, the lad saw coming the car with its headlight, which he could see as far west as Madison avenue, respecting which, however, he did nothing except to watch to see whether it could pass. As he says, the car struck the hub of the wheel, as a result of which, the nigh horse's foot was caught in the fender, to its serious injury. Appar-

ently both the driver and the motorman thought or calculated that there was space enough for the car to go by. The motorman says as much. The driver was not produced, failing to respond to a subpœna. If, then, each was wrong in his calculations, the fault of one may not be laid to the blame of the other, but in that case the judgment should be reversed. The testimony respecting the speed at which the car was moving was not very divergent. The boy said in one place that the car came along very fast, and then that it was not going very fast or very slow. Other witnesses testified that it was going at an ordinary rate. However rapidly the motorman set the speed of the car, if it was within his control, he was obeying the exigencies of public service for rapid conveyance of passengers, for whose benefit a qualified use of the street is given by franchise, thus restricting its use for other purposes and persons. The presence of an unlighted vehicle athwart the roadway barely reaching the car track, though a possibility, was not likely, particularly one of such unusual length, for, as commonly seen, the length of trucks is so adjusted as to leave space sufficient for cars to pass by when a team is turned as was this. On the other hand, the driver was quite, if not more, at fault in his calculation. He had the best means of knowing the space required for his vehicle. It is not shown that it was necessary for him to occupy the railway tracks as he did, and that it was impracticable to remove the merchandise without approaching upon the railway in \any manner. The conditions were obvious to him. It was an indisputable interference with public travel, an inexcusable exposure of the property of his employer (the plaintiff) to injury and the passengers and the company's employés to peril. He would not have been more negligent if he had left his team and truck without any one on the box; the lad, either from indiscretion or inability, doing nothing when the occasion came for doing something. "The need is so constant and so imminent from the nature and requirements of a street railway as that it may be and ought to be always expected." Adolph v. C. N. & E. R. R. Co., 76 N. Y. 521, 537. If it be negligent for a person to cross the tracks of a street railway without looking in both directions for the to be anticipated car, so it is the more careless to place a vehicle in a position of danger, and leave it either unguarded or to leave it in the hands of one who, either from lack of judgment or discretion, does nothing at the time of danger but to watch to see what may happen. "If, then, it was negligence for the motorman to make a miscalculation, was it not equally negligent for him [her] to do so? They owed the same duty to each other, and each had the right to assume that the other would discharge it. That being so, it cannot be held that the motorman was negligent in thinking exactly as he [she] thought. No different standard of care can be applied to either. If one was negligent, the other was negligent. There was either no negligence on the part of either, or there was joint negligence." Freedman, P. J., in Kaufman v. Interurban St. Ry. Co. (May Term, 1904) 88 N. Y. Supp. 382.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.